UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| TROY S., | ) | Case No. ED CV 18-299-PJW |
| Plaintiff, | ) | |
| | ) | MEMORANDUM OPINION AND ORDER |
| v. | ) | |
| NANCY A. BERRYHILL, ACTING COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | ) | |
| Defendant. | ) | |

I.

INTRODUCTION

Plaintiff appeals a decision by Defendant Social Security Administration ("the Agency"), denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). He claims that the Administrative Law Judge ("ALJ") erred when he rejected the treating and examining doctors' opinions and relied, instead, on the opinions of the reviewing doctors. For the reasons explained below, the ALJ's decision is reversed and the case is

remanded to the Agency for further proceedings consistent with this opinion.[1]

## II.

## SUMMARY OF PROCEEDINGS

In April 2014, Plaintiff applied for DIB and SSI, alleging that he had been disabled since December 20, 2012, due to, among other things, chronic depression, sleep apnea, sleep deprivation, and anxiety.[2] (Administrative Record ("AR") 113-14, 119.) His applications were denied initially and on reconsideration and he requested and was granted a hearing before an ALJ. (AR 171-72, 179-80.) In December 2016, he appeared with counsel and testified at the hearing. (AR 43-112.) In January 2017, the ALJ issued a decision denying benefits. (AR 20-36.) Plaintiff appealed to the Appeals Council, which denied review. (AR 1-3.) He then filed the instant action.

## III.

## ANALYSIS

Plaintiff's treating and examining psychiatrists opined, essentially, that Plaintiff's bipolar disorder prevented him from working. (AR 390-92, 393-99, 530.) The reviewing doctors came to the opposite conclusion. (AR 113-25, 141-53.) The ALJ accepted the reviewing doctors' opinions and concluded that Plaintiff could work.

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill, the current Acting Commissioner of the Social Security Administration, is hereby substituted in as the defendant.

[2] Plaintiff also included some other physical ailments. The ALJ found that they did not preclude work and Plaintiff has not appealed that part of the ALJ's decision.

Plaintiff contends that the ALJ erred in doing so.  For the following reasons, the Court agrees.

The facts of this case are somewhat unusual.  Plaintiff was working in December 2012 when he was arrested and charged with having sex with his foster daughter.  This relationship had been uncovered some months earlier by his wife, who had come home early one day and found Plaintiff and his foster daughter having sex in their home.  (AR 949.)  As a result of his arrest, Plaintiff was fired from his job.  (AR 943.)  He was convicted several months later and incarcerated for six months.  When he was released, he was required to obtain mental health treatment, which he did, beginning in November 2013 at the Riverside County Mental Health Department.  Plaintiff treated there, primarily with psychiatrist Jesus Bucardo, through September 2016.

Dr. Bucardo prepared his initial opinion in February 2014.  (AR 390-92.)  The ALJ discounted it because he found that it was not supported by Dr. Bucardo's notes.  (AR 28.)  The ALJ found that during this period Plaintiff was not reporting any complaints and Dr. Bucardo noted that Plaintiff was symptomatic but stable and that his mental status exams were unremarkable.  (AR 28.)

Though it is true that during this period Dr. Bucardo noted that Plaintiff was stable and that his mental status exams were unremarkable, Dr. Bucardo was still diagnosing Plaintiff with bipolar disorder and treating him with psychotropic medications like Seroquel. (AR 483, 502-06.)  Clearly, he would not have done so if he believed that Plaintiff was not suffering from mental illness.  Thus, the Court does not find that Dr. Bucardo's chart notes undermined his opinion.

The ALJ also relied on the fact that the February 2014 assessment was made "during a time of great personal stress as [Plaintiff] was

transitioning from prison and dealing with being separated from his wife." (AR 28.) Plaintiff argues that this was nothing more than Monday morning quarterbacking and the ALJ was not qualified to make that call. (Joint Submission at 16-17.) The Court need not resolve whether the ALJ was qualified to reach this conclusion because the record is replete with evidence that that is what the medical professionals surmised as well.

During Plaintiff's November 2013 intake assessment by the therapist who worked with Dr. Bucardo, she noted:

> Client reports that he was recently released from jail for [sexually assaulting his daughter]. Client reports that he feels he is no longer accepted in his family home. Client reports feeling depressed, angry, frustrated and worried about his life. Client stated: "I just don't feel like I have any choices and I don't know what I can do . . . . can I work again, I need a place to live etc. . . ." Client reports constantly crying because his marriage is in trouble and he is feeling extremely over emotional and then stated: "I have never felt this way."

(AR 472.)

In November of that same year, the therapist noted:

> Client is making progress towards personal goals and relieved to be off of probation. Client *continues to experience periods of depression, isolating from others and continues to experience chronic stressors related to his [criminal] charge*. Client reports difficulty sleeping and worrying about obtaining full time employment.

(AR 478 (emphasis added).)

1 Thus, it was fair for the ALJ to conclude that Plaintiff was in a
2 state of crisis when Dr. Bucardo initially assessed him in February
3 2014.  Plaintiff's argument that the ALJ should not have reached this
4 conclusion is rejected.

5 Dr. Bucardo provided a second opinion in December 2014.  (AR
6 530.)  As in the first, Dr. Bucardo found that Plaintiff's bipolar
7 disorder severely limited his ability to function in the workplace.
8 The ALJ rejected this opinion because it was on a check-the-box form
9 and because the treatment notes did not support it.  (AR 28-29.)  As
10 with his criticism of the first opinion, the ALJ also noted that Dr.
11 Bucardo had consistently found that Plaintiff was stable and that his
12 cognition was intact.  (AR 29.)

13 ALJs are permitted to discount a treating doctor's opinion that
14 is contained in a check-the-box form if the doctor's records do not
15 support the extent of the limitations and/or the doctor fails to
16 explain the reasons for the conclusions.  *See, e.g., Tonapetyan v.*
17 *Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (holding ALJ may reject
18 treating opinion that is "conclusory and brief and unsupported by
19 clinical findings"); and *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir.
20 1996) (holding ALJ may reject "check-off reports" that do not contain
21 any explanation for their conclusions).  But that does not appear to
22 be the case here.  Though it is true that Dr. Bucardo consistently
23 noted that Plaintiff was stable, he also continually noted that
24 Plaintiff had symptoms of impairment, which Dr. Bucardo treated with
25 drugs.  (AR 808-13.)  Thus, the Court does not agree with the ALJ that
26 Dr. Bucardo's opinion was undermined by his treatment notes.

27 As for the fact that the opinion was on a check-the-box form,
28 that seems to be a fair criticism, at least in part.  It is hard to

determine exactly what facts support Dr. Bucardo's findings of marked impairment.  On the other hand, however, as Plaintiff has pointed out, in lieu of Dr. Bucardo's opinion on the check-the-box form, the ALJ accepted the opinions of the reviewing doctors, who provided their opinions on somewhat similar check-the-box forms.

The ALJ also questioned Dr. Bucardo's December 2014 finding that Plaintiff was experiencing symptoms of bipolar disorder because it was contradicted by contemporaneous statements Plaintiff was making to vocational staff services providers.  (AR 29.)  This reason is supported by the record.

In conjunction with the psychiatric services Plaintiff was provided by the Riverside County Department of Mental Health, he received vocational services from the same department between 2014 and 2016.  (AR 739-43, 890-939.)  Vocational staff met with Plaintiff on a regular basis, often more than once a week, and counseled him on how to find a job and, once he found one, how to keep it.  One of the things staff did each time they met with him was to record what he reported his psychiatric symptoms were and what they observed.  (AR 739.)  At the outset, in April 2014, Plaintiff reported to staff that he was depressed and anxious.  (AR 890-91.)  By October 2014, he was reporting that he was not experiencing any psychiatric symptoms and staff noted that they did not observe any, either.  (AR 904.)  Thereafter, he regularly reported that he was doing "very well" and not experiencing psychiatric symptoms.  (AR 906.)  This included his session on December 4, 2014, two days after Dr. Bucardo authored his second opinion, concluding that Plaintiff's condition precluded him from full-time work.  (AR 530, 910.)  As the ALJ found, these vocational records documenting contemporaneous statements by Plaintiff

6

that he was not experiencing any psychiatric symptoms and was doing very well undermined Dr. Bucardo's conclusion that he was impaired.

In the end, the Court finds that some of the reasons the ALJ cited for questioning Dr. Bucardo's opinion were supported by the record and others were not.

The ALJ also questioned examining psychiatrist Denise Joseph's opinion. She examined Plaintiff in August 2014, conducted some tests, and concluded that Plaintiff suffered from bipolar disorder that impaired his ability to work. (AR 393-99.) The ALJ discounted this opinion because he found that it was not supported by treatment notes --presumably Dr. Bucardo's treatment notes--showing that Plaintiff was stable, able to engage in part-time and later full-time work, and exhibited unremarkable findings in mental status exams. (AR 29.) This reason for questioning Dr. Joseph's opinion is rejected. First, Dr. Bucardo's treatment notes do support to some extent the findings made by Dr. Bucardo. Second, it does not appear from reading Dr. Joseph's report that she reviewed Dr. Bucardo's notes. As she explained in her report, the source of her information was Plaintiff.

The ALJ's second reason for discounting Dr. Joseph's opinion was that it was not supported by Dr. Joseph's examination findings. (AR 29.) Here, the Court would agree. In reading Dr. Joseph's report, it almost seems as if the conclusions at the end of the report were mistakenly pasted onto the wrong report. Dr. Joseph explains throughout the report that Plaintiff is basically normal based on her assessment and some tests that she administered. (AR 393-99.) Then, at the end of the report, she concludes without explanation that he suffers from bipolar disorder that precludes employment. Because the

findings in the report do not support the ultimate conclusion, the ALJ did not err in rejecting the opinion.[3]

In lieu of Dr. Bucardo and Dr. Joseph's opinions, the ALJ relied on the reviewing doctors' opinions. (AR 29.) These opinions come with their own problems. To begin with, as Plaintiff has pointed out, they are contained in a form that is not materially different than the check-the-box forms Dr. Bucardo used. Further, the reviewing doctors' opinions seem to be almost identical, as if the second doctor merely copied the first doctor's work. Finally, at best, these doctors simply relied on what Dr. Bucardo observed while he was treating Plaintiff and offered a different take on Dr. Bucardo's findings. These problems call into question the strength of the reviewing doctors' opinions.[4]

In the end, however, the biggest problem the Court has with the reviewing doctors' opinions is the same problem it has with the other doctors' opinions: they were stale when the ALJ considered them in rendering his decision in 2017. Plaintiff claims that he was disabled as of December 2012. The ALJ held the hearing in December 2016 and

---

[3] It appears that the only plausible basis for Dr. Joseph's conclusion is Plaintiff's statements to her that he is bipolar and is being treated for it. Assuming that that is the case, it is probably not enough in light of the fact that the ALJ found that Plaintiff was not credible (a finding Plaintiff has not challenged). *See, e.g., Tonapetyan*, 242 F.3d at 1148 (upholding ALJ's rejection of doctors' opinions that were based on claimant's report of symptoms where claimant was found to be not credible). The ALJ will have to take another look at this on remand.

[4] It is not clear if the first reviewing doctor, psychologist Phillip Rosenshield, had Dr. Bucardo's notes when he rendered his opinion in September 2014. He noted that there were no medical records from "Dr. Broward"--presumably meaning Dr. Bucardo--when he reviewed the records. (AR 121.)

issued his decision in January 2017.  But all of the doctors' reports were, practically speaking, irrelevant by then.  Dr. Bucardo's February and December 2014 opinions provided little insight into Plaintiff's condition in January 2017.  The same is true about Dr. Joseph's August 2014 opinion, Dr. Rosenshield's September 2014 opinion, and Dr. Vaghaiwalla's January 2015 opinion.  The medical records make clear that Plaintiff's condition changed over time and that the change was not necessarily linear.  It consisted of ups and downs, as one might expect for someone suffering from a disorder of this nature facing changing circumstances in family and work life.  Ultimately, though, despite these challenges, in 2016, Plaintiff earned his way into a full-time job.  None of the doctors took this into account because all of them had completed their reports years before then.

On remand, the ALJ should determine how best to obtain relevant medical evidence for the entire time frame he will be considering in determining whether Plaintiff suffers from or did suffer from mental/emotional impairment that precludes work.  That could be accomplished by a testifying doctor, a reviewing doctor, supplemental reports from the treating, examining, and reviewing doctors or any other mechanism that the ALJ deems appropriate.  The ALJ (and Plaintiff) might also consider whether there was a discrete period of time in which Plaintiff was disabled.

## IV.
## CONCLUSION

For the reasons set forth above, the Agency's decision is reversed and the action is remanded for further consideration consistent with this Memorandum Opinion and Order.

IT IS SO ORDERED.

DATED: May 3, 2019

_____
PATRICK J. WALSH
UNITED STATES MAGISTRATE JUDGE

S:\PJW\Cases-Social Security\TROY S. 299\Memo opinion.wpd